UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TIMOTHY GREENLEE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHICK, *Correctional Officer, in individual capacity*; | ) | No. 2:23-cv-00075-JMS-MG |
| NEAL, *Correctional Officer, in individual capacity*; | ) | |
| WALSH, *Correctional Officer, in individual* | ) | |
| *capacity*; NORTON, *Correctional Officer, in* | ) | |
| *individual capacity*; ADAMS, *Correctional Officer,* | ) | |
| *in individual capacity*; and PADGETT, *Correctional* | ) | |
| *Officer, in individual capacity,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Timothy Greenlee was an incarcerated individual at Wabash Valley Correctional Facility ("Wabash Valley") during the events underlying this litigation.[1]  He filed this lawsuit alleging violations of his Eighth Amendment rights.[2]  Defendants have filed a Motion for Summary Judgment, which is ripe for the Court's consideration.  [Filing No. 28.]  For the reasons below, that motion is **GRANTED.**

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] Mr. Greenlee's address on the docket indicates that he is currently incarcerated at New Castle Correctional Facility.  [*See also* Filing No. 29-1 at 7.]

[2] These are the claims which the Court found should proceed after the Court screened Mr. Greenlee's Complaint pursuant to 28 U.S.C. § 1915A(a), (c).  [Filing No. 1; Filing No. 6.]

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party, including giving that party the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor.  *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).  "Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party.  Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources."  *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough."  *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions,

documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When the evidence in the case involves a video of the relevant events, "[a] twist on the usual standard of review is at play." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). "When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)). In other words, the Court "can rely on clear and conclusive videos if 'they firmly settle[ ] a factual issue.'" *Manery v. Lee*, 124 F.4th 1073, 1077 n.5 (7th Cir. 2025) (quoting *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)).

## II.
### FACTUAL BACKGROUND

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). In other words, because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Greenlee, including giving him the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor. *Ziccarelli*, 35 F.4th at 1083; *Khungar*, 985 F.3d at 572-73. This means that where Mr. Greenlee has submitted admissible evidence regarding his version of events, the Court accepts his version as true for the purposes of summary judgment, ignoring Defendants' conflicting evidence.

### A.    The Parties

Mr. Greenlee was incarcerated at Wabash Valley during the events at issue. [Filing No. 29-1 at 5; Filing No. 29-1 at 8-9.] The Defendants in this case are employed as either Sergeants or Correctional Officers at Wabash Valley. [Filing No. 29-2 through Filing No. 29-8.]

### B.    The Events Underlying Mr. Greenlee's Claims

#### 1.    Mr. Greenlee Is Assaulted by Another Inmate Posing as His Cellmate

On the night of April 12, 2022, while Mr. Greenlee was asleep in his cell in the general population housing unit at Wabash Valley, his cellmate switched cells with another incarcerated individual, allowing that individual access to Mr. Greenlee's cell. [Filing No. 29-1 at 10-13.] Mr. Greenlee was awakened when the door to his cell closed and the individual was getting situated for bed, but he thought that it was his cellmate who was climbing into the upper bunk. [Filing No. 29-1 at 15-16.] The individual turned on the television and Mr. Greenlee went back to sleep. [Filing No. 29-1 at 16.] Mr. Greenlee was later awakened to the individual in his bed, looming over him, with his pants down, fully exposed. [Filing No. 29-1 at 16.] Mr. Greenlee yelled for help and tried to jump up, but the individual was larger than him and held him down, including by choking him. [Filing No. 29-1 at 16.] After Mr. Greenlee began yelling, Sgt. Neal and Officer Shick arrived at the cell "pretty quick[ly]." [Filing No. 29-1 at 16-17.][3] The individual loosened his grip on Mr. Greenlee when Sgt. Neal and Officer Shick ordered him to get off of Mr. Greenlee.

---

[3] In his Statement of Material Facts in Dispute, Mr. Greenlee asserts that Sgt. Neal and Officer Shick and others in the control pod of the general population unit knew that the individual had snuck into Mr. Greenlee's cell but that they did not check on Mr. Greenlee. [Filing No. 37 at 2-3.] Mr. Greenlee does not cite to any evidence in the record to support his assertion, so the Court does not credit it. Fed. R. Civ. P. 56(c)(1)(A), (e) (stating that parties must support asserted facts by citing to particular parts of the record, including depositions, documents, or affidavits, and that a failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment).

[Filing No. 29-1 at 17-18.]  Mr. Greenlee was able to slide out from under the individual and roll to the floor.  [Filing No. 29-1 at 17-18.]

> 2.    *The Individual Is Removed from Mr. Greenlee's Cell and Mr. Greenlee Is Sprayed with Oleoresin Capsicum Spray*

Mr. Greenlee was still "pretty shocked" at this point and tried to place the individual in a headlock.  [Filing No. 29-1 at 18.]  Sgt. Neal and Officer Shick ordered Mr. Greenlee to let go of the individual, and Mr. Greenlee complied.  [Filing No. 29-1 at 18.]  The individual was then restrained by Sgt. Neal and Officer Shick and escorted from the cell by both Officers.  [Filing No. 29-1 at 18.]  Non-party Sgt. Small then arrived at Mr. Greenlee's cell and ordered Mr. Greenlee "to cuff up," to which Mr. Greenlee responded, "just give me second" and tried to put on his pants and shoes.  [Filing No. 29-1 at 18.]  Mr. Greenlee was then sprayed with Oleoresin Capsicum ("OC Spray"),[4] restrained with hand cuffs, and taken to the Secure Housing Unit ("SCU") at Wabash Valley, where he was placed into a shower unit for a decontamination shower.  [Filing 29-1 at 18-21.]

Mr. Greenlee did not have any prior issues or altercations with the individual who switched into his cell and only knew that individual in passing.  [Filing No. 29-1 at 14-15.]  Sgt. Neal and

---

[4] Mr. Greenlee alleges in his Complaint that a non-party supervisor deployed this burst of OC Spray.  [Filing No. 1 at 3.]  Mr. Greenlee later testified that the individual was non-party Sgt. Small, stating that Sgt. Neal and Officer Shick were no longer present at his cell after they removed the individual who snuck in.  [Filing No. 29-1 at 19.]  But after Defendants asserted and submitted evidence on summary judgment that Sgt. Neal deployed this burst of OC Spray, [Filing No. 36 at 4 (citing Filing No. 29-3 at 2)], Mr. Greenlee asserted in his response, without citation to any evidence, and contrary to his Complaint, that Sgt. Neal deployed the OC Spray, [Filing No. 37 at 4].  While the Court retains discretion to interpret new factual allegations presented in a plaintiff's summary judgment response brief as a constructive motion to amend the complaint, exercising that discretion is "rarely . . . appropriate."  *Schmees v. HC1.COM, Inc.*, 77 F.th 483, 488 (7th Cir. 2023).  The Court in its discretion finds that it is not appropriate here.  The Court therefore will analyze the issue consistent with Mr. Greenlee's Complaint, as well as his version of events supported by the factual underpinnings in his testimony for the purposes of summary judgment.

Officer Shick were likewise unaware of any issues between Mr. Greenlee and the individual who switched into his cell and were unaware of any threats or safety concerns for Mr. Greenlee in general. [Filing No. 29-2 at 2; Filing No. 29-3 at 2.]

       3.     *Mr. Greenlee Is Sprayed Again While in the Decontamination Shower Unit*

While in the decontamination shower unit, Mr. Greenlee was ordered to remove his clothes and was given a red jumpsuit through the cuff port.[5] [Filing No. 29-1 at 24.] The jumpsuit was wet, dirty, and smelled like OC Spray. [Filing No. 29-1 at 25.] Mr. Greenlee refused to put the jumpsuit on and asked for a clean one, but his request was denied. [Filing No. 29-1 at 25.] Non-party Officer Vaughn was standing outside the shower unit talking to Mr. Greenlee about the jumpsuit when Mr. Greenlee reached—with a closed hand—through the cuff port quickly toward Officer Vaughn's groin area.[6] [Filing No. 29-9 at 06:45-07:02.][7]

Officer Vaughn left the range, and Sgt. Koziatek and Officer Walsh took his place. [Filing No. 29-4 at 2; Filing No. 29-5 at 1; Filing No. 29-9 at 09:28-09:30.] Sgt. Koziatek ordered Mr.

---

[5] Mr. Greenlee contends that the shower unit was not ventilated, but he cites no evidence in support of that assertion, [Filing No. 37 at 8-9], so the Court does not credit Mr. Greenlee's assertion, Fed. R. Civ. P. 56(c)(1)(A), (e).

[6] Mr. Greenlee asserts that he reached out with an open hand and tried to grab the OC Spray canister from Officer Vaughn's hand, but the irrefutable video evidence clearly shows that Mr. Greenlee reached out with a closed fist toward Officer Vaughn's groin area. [Filing No. 29-9 at 06:55-06:58.] The Court therefore does not credit Mr. Greenlee's version of events. *Williams*, 809 F.3d at 942. The parties also dispute whether Mr. Greenlee made contact with Officer Vaughn. [Filing No. 36 at 5; Filing No. 37 at 6.] It is unclear on the video footage whether contact was made or whether Officer Vaughn acted quickly enough and jumped backward before contact was made. [Filing No. 29-9 at 06:45-07:02.] Given the dispute and the fact that the video evidence is not conclusive on this issue, the Court views the evidence in the light most favorable to Mr. Greenlee and, for the purposes of summary judgment, credits his contention that no contact was made when he reached toward Officer Vaughn's groin area with a closed fist. *Ziccarelli*, 35 F.4th at 1083.

[7] Defendants submitted and manually filed camera footage of the SCU range containing the shower unit that Mr. Greenlee was placed in. [Filing No. 29-9; Filing No. 32.] Because the camera footage was manually filed, the Court does not link to the docket when citing to the footage.

Greenlee again to put on the jumpsuit and to submit to mechanical restraints so that he could be transported to a cell, and Mr. Greenlee refused. [Filing No. 29-1 at 33-34; Filing No. 29-4 at 2.] When in the SCU, inmates must be in restraints when they are transported. [Filing No. 29-6 at 2.] Sgt. Koziatek warned Mr. Greenlee that his refusal to comply with orders to change into the jumpsuit and submit to restraints would lead to the use of OC Spray. [Filing No. 29-4 at 2; Filing No. 29-5 at 2.] Mr. Greenlee did not comply, and Sgt. Koziatek administered a single burst of OC Spray through the top of the cell door. [Filing No. 29-9 at 09:35-9:47.]

For approximately the next ten minutes, Mr. Greenlee moved around erratically in the shower unit, fully clothed in his original clothing and blocking the windows and window cracks with the jumpsuit.[8] [Filing No. 29-5 at 2; Filing No. 29-9 at 09:47-20:19.] Sgt. Koziatek remained outside the cell the entire time with Officer Walsh. [Filing No. 29-9 at 09:47-20:19.] At no point in the approximately ten minutes did Mr. Greenlee put on the jumpsuit or submit to restraints despite being continuously ordered to do so. [Filing No. 29-4 at 2; Filing No. 29-5 at 2; Filing No. 29-9 at 09:47-20:19.] Sgt. Koziatek deployed another single burst of OC Spray into the shower cell, occurring approximately ten minutes after the prior burst. [Filing No. 29-9 at 20:19-20:32.]

Mr. Greenlee continued to move erratically inside the shower cell, including continuing to hold the jumpsuit over the windows and cracks. [Filing No. 29-5 at 2; Filing No. 29-9 at 20:35-25:34.] At one instance, camera footage shows Mr. Greenlee step away from the window for a moment and then reappear quickly and slam the jumpsuit on the windows, which caused both Sgt. Koziatek and Officer Walsh to react immediately as if a substance had shot through the cuff port

---

[8] Defendants submit evidence that Mr. Greenlee's behavior during these ten minutes was "disorderly, belligerent[ ], . . . loud and obscene." [Filing No. 36 at 6 (citing Filing No. 29-4 at 2; Filing No. 29-5 at 2).] Mr. Greenlee does not dispute this evidence or characterization. [*See* Filing No. 37.] While there is no audio on the camera footage, it does appear that Mr. Greenlee moved around erratically. [Filing No. 29-9 at 09:47-20:19.]

and gotten on them. [Filing No. 29-9 at 25:32-25:34.] The camera footage then shows Sgt. Koziatek and Officer Walsh back away and wipe their eyes. [Filing No. 29-9 at 25:32-29:47.] Sgt. Koziatek then moved to close and lock the cuff port but was unable to secure it alone due to Mr. Greenlee's actions of blocking it from being closed. [Filing No. 29-5 at 1; Filing No. 29-9 at 25:47-27:55.] Sgt. Koziatek and Officer Walsh were eventually able to close the cuff port. [Filing No. 29-9 at 25:47-27:55.]

Throughout this time, Mr. Greenlee continued to refuse to comply with orders. [Filing No. 29-9 at 27:00-29:35.] Sgt. Koziatek prepared to deploy a third burst of OC Spray into the shower unit by sliding the nozzle in the top right of the door but did not deploy any OC Spray yet. [Filing No. 29-9 at 28:35-29:32.] Rather, he and Officer Walsh spoke with Mr. Greenlee for approximately another minute before Sgt. Kozaitek removed the nozzle without deploying any OC Spray. [Filing No. 29-9 at 28:35-29:35.][9]

Sgt. Koziatek and Officer Walsh continued to talk with Mr. Greenlee through the cell door for another fifty seconds before placing the nozzle back through the door. [Filing No. 29:36-30:15.] Shortly thereafter, Mr. Greenlee removed the jumpsuit from the window and cracks and continued talking with Sgt. Koziatek and Officer Walsh. [Filing No. 29-9 at 30:15-31:55.] Sgt. Koziatek removed the nozzle from the door without deploying OC Spray. [Filing No. 29-9 at 30:56-57.] Approximately two minutes later, Sgt. Koziatek slid the nozzle through the side of the door and deployed a third burst of OC Spray. [Filing No. 29-9 at 32:41-32:53.]

Sgt. Koziatek checked his watch multiple times during the events to ensure that OC Spray was not consecutively used in too close of proximity. [Filing No. 29-5 at 2; Filing No. 29-9 at

---

[9] It appears that Sgt. Koziatek removed the nozzle because Mr. Greenlee jammed the jumpsuit in the top corner to block the nozzle. [Filing No. 29-2 at 30:00-30:04.]

20:19-32:50.]  Throughout the time that Mr. Greenlee was in the shower unit, Mr. Greenlee had access to running water and was able to use the water to wash out his eyes and lessen the effects of the OC Spray.[10]  [Filing No. 29-5 at 2; Filing No. 29-6 at 2.]

### 4.    Mr. Greenlee Agrees to Submit to Restraints

After the three bursts of OC Spray, Defendants determined that the use of OC Spray was ineffective and decided that a cell extraction should be the next step.  [Filing No. 29-6 at 2.]  Sgt. Neal became aware of the plan for a cell extraction and offered to talk with Mr. Greenlee, as the two had a good rapport.  [Filing No. 29-3 at 2; Filing No. 29-6 at 3.]  Sgt. Neal and Mr. Greenlee spoke, and Mr. Greenlee agreed to submit to restraints and go to his assigned cell.  [Filing No. 29-3 at 2.]  Before being escorted to his cell, Mr. Greenlee was taken to be evaluated by medical staff, who released him to his cell.  [Filing No. 29-4 at 3.]

### C.    Other Defendant Officers' Roles in the Events Underlying Mr. Greenlee's Claims

#### 1.    Officer Padgett

Officer Padgett was working in the SCU's control pod during the events above and kept a timesheet for the use of OC Spray.[11]  [Filing No. 29-7.]  Officer Padgett did not leave the SCU's control pod during the events above.  [Filing No. 29-7 at 2.]

#### 2.    Officer Adams

Officer Adams was working and present in the SCU when Mr. Greenlee was in the shower cell.  [Filing No. 29-6 at 1.]  Although completing other tasks within the SCU during the events

---

[10] Mr. Greenlee does not dispute Defendants' assertion that he had access to running water or that he washed out his eyes.  [*See* Filing No. 37.]  The Court therefore considers it undisputed.  Fed. R. Civ. P. 56(e).

[11] The timesheet is a not a part of the record in this case, but it is of no matter because the camera footage clearly shows when OC Spray was deployed.  [Filing No. 29-9.]

above, Officer Adams was available to assist Sgt. Koziatek and Officer Walsh.  [Filing No. 29-6 at 2.]  He was not present, however, at the moments when Sgt. Koziatek deployed OC Spray. [Filing No. 29-6 at 2; Filing No. 29-9 at 09:28-32:50.]

### 3.    Officer Norton

Officer Norton was also working and present in the SCU when Mr. Greenlee was in the shower cell.  [Filing No. 29-8 at 1.]  However, because Officer Norton is a female officer, she was not involved while Mr. Greenlee was in the shower and only assisted Sgt. Koziatek by providing him keys to the shower cell's cuff port.  [Filing No. 29-8 at 2; Filing No. 29-9 at 09:28-32:50.]

### D.  This Lawsuit

Mr. Greenlee filed this *pro se* lawsuit on February 16, 2023.  [Filing No. 1.]  The Court screened Mr. Greenlee's Complaint pursuant to 28 U.S.C. § 1915A, and found that the following claims would proceed, all under the Eighth Amendment:

1.  Failure to protect claim against Sgt. Neal and Officer Shick in connection with the attack from another inmate;

2.  Failure to intervene claim against Sgt. Neal and Officer Shick in connection with being sprayed with OC Spray by Sgt. Small after Mr. Greenlee's attacker was removed from the cell;

3.  Excessive force claim against Sgt. Koziatek in connection with the use of three bursts of OC Spray while in the decontamination shower; and

4.  Failure to intervene claim against Officers Walsh, Norton, Adams, and Padgett in connection with Sgt. Koziatek deploying OC Spray.

[Filing No. 6 at 3-4.]

10

## III.

### DISCUSSION[12]

#### A.    Eighth Amendment Failure to Protect

Defendants argue that they are entitled to summary judgment on this claim because neither Sgt. Neal nor Officer Shick were aware of any threats or safety concerns for Mr. Greenlee within the general population unit, and highlight that even Mr. Greenlee testified that he was not aware of any issue between him and the incarcerated individual who snuck into his cell.  [Filing No. 36 at 15 (citations omitted).]   Defendants also argue that after they became aware of the incident by hearing Mr. Greenlee yell for help, they arrived at the cell quickly, ordering the individual to get off Mr. Greenlee and removing him.  [Filing No. 36 at 16.]

Mr. Greenlee argues that Sgt. Neal and Officer Shick knew that the individual snuck into Mr. Greenlee's cell and ignored it.[13]  [Filing No. 37 at 2-3.]

Defendants reiterate their argument in reply.  [Filing No. 38 at 2.]

Under the Eighth Amendment, prison officials have a duty to protect inmates from violent assaults by other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).  They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger."  *Guzman v. Sheahan*, 495 F.3d 852, 857

---

[12] Mr. Greenlee filed an Affidavit and Supplement after Defendants' Reply in Support of their Motion for Summary Judgment.  [Filing No. 39.]  Mr. Greenlee's Affidavit and Supplement discusses events that are not at issue in this case and implicates individuals that are not defendants in this case.  [Filing No. 39.]  It is therefore irrelevant, and the Court does not consider it in deciding Defendants' Motion for Summary Judgment.

[13] The Court does its best to construe the arguments set forth in Mr. Greenlee's Response to Motion for Summary Judgment despite the absence of specific headings linking arguments to each claim.  [Filing No. 37.]

11

(7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010).  To succeed on a claim for failure to protect, Mr. Greenlee must show that (1) Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk.  *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).  An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it.  *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).  "A generalized risk of violence is not enough [to show a substantial risk of serious injury], for prisons are inherently dangerous places."  *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citation omitted).

Sgt. Neal and Officer Shick both stated in their Affidavits that they were unaware of any issues between Mr. Greenlee and the individual who switched into his cell and were unaware of any threats or safety concerns for Mr. Greenlee in general.  [Filing No. 29-2 at 2; Filing No. 29-3 at 2.]  Mr. Greenlee himself testified that he did not have any prior issues or altercations with the individual who switched into his cell and only knew that individual in passing.  [Filing No. 29-1 at 14-15.]  Based on this evidence, Mr. Greenlee has failed to produce evidence of the first required element in a failure to protect claim—that Sgt. Neal and Officer Shick were aware that the individual might try to get into Mr. Greenlee's cell and create a substantial risk of serious injury to him.  *See Farmer*, 511 U.S. at 834, 837.  His claim therefore fails.

Mr. Greenlee's claim also fails as to the second element of his failure to protect claim because he has not produced or cited admissible evidence that Sgt. Neal and Officer Shick acted with deliberate indifference in connection with the individual sneaking into his cell or in connection with the response time it took for Sgt. Neal and Officer Shick to arrive after they heard Mr. Greenlee yell for help.  *Borello*, 446 F.3d at 747.  To the contrary, Mr. Greenlee testified that

Sgt. Neal and Officer Shick arrived at his cell "pretty quick[ly]" after he began yelling for help, which shows that the Officers acted with urgent care, not deliberate indifference. [Filing No. 29-1 at 16-17.]

Because Mr. Greenlee has not shown that Sgt. Neal and Officer Shick were aware of a substantial risk of injury to Mr. Greenlee and subsequently disregarded such a risk, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Greenlee's Eighth Amendment claim against Sgt. Neal and Officer Shick related to the individual sneaking into his cell.

### B.    Eighth Amendment Failure to Intervene Claim Against Sgt. Neal and Officer Shick

Mr. Greenlee alleges that Sgt. Neal and Officer Shick are liable for failing to intervene against Sgt. Small's use of OC Spray because Sgt. Neal and Officer Shick did not communicate to Sgt. Small that Mr. Greenlee was the victim, undeserving of OC Spray.[14] [Filing No. 1; Filing No. 6.]

Defendants argue that they are entitled to summary judgment on Mr. Greenlee's claim because he was not sprayed with OC Spray due to a communication failure but rather because he placed his attacker in headlock and then refused to obey Sgt. Small's command to submit to restraints. [Filing No. 36 at 17-18.] They argue that based on Mr. Greenlee's actions, the use of OC Spray was not excessive force and because a claim of failure to intervene necessarily depends on an action of excessive force, they argue, then the claim against Sgt. Neal and Officer Shick must fail. [Filing No. 36 at 17-18 (citations omitted).] Defendants also assert that, even if the force is deemed excessive, Mr. Greenlee did not produce evidence showing that Sgt. Neal and

---

[14] As explained in footnote 4 above, the Court addresses the issue consistent with the claim in Mr. Greenlee's Complaint and version of events that Sgt. Small was the individual who deployed this burst of OC Spray, not Defendants' version that Sgt. Neal deployed the OC Spray.

Officer Shick had actual knowledge of Sgt. Small's action and therefore cannot show that they had a realistic opportunity to intervene. [Filing No. 36 at 17-18.]

Mr. Greenlee argues that Sgt. Neal and Officer Shick concealed from Sgt. Small the material fact that Mr. Greenlee was attacked by the individual and that Mr. Greenlee was not the aggressor in the altercation. [Filing No. 37 at 4.] He asserts that this lack of communication led to Sgt. Small thinking that Mr. Greenlee may have been the attacker who was deserving of OC Spray, which amounts to a failure to intervene claim. [Filing No. 37 at 4; *see* Filing No. 6 at 3.] In other words, he argues that if Sgt. Neal and Officer Shick had communicated to Sgt. Small that Mr. Greenlee was the victim, then Sgt. Small would not have deployed the OC Spray. [Filing No. 37 at 4.]

Defendants reiterate that the OC Spray was not excessive force and assert that the undisputed evidence shows that OC Spray was deployed in a good faith effort to restore discipline, which causes Mr. Greenlee's failure to intervene claim to fail. [Filing No. 38 at 3.]

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials and the infliction of "unnecessary and wanton" pain on prisoners. *Jones v. Anderson*, 116 F.4th at 677 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)); *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). "An officer who fails to intervene to try to prevent known cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under § 1983." *Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

It is not cruel and unusual punishment to use "mace, tear gas or [an]other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small

amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable), *abrogated on other grounds by Kemp v. Fulton Cnty.*, 27 F.4th 491, 497 (7th Cir. 2022). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

Mr. Greenlee's claim fails because the evidence shows that he was not sprayed with OC Spray because Sgt. Neal and Officer Shick did not communicate to Sgt. Small that Mr. Greenlee was the initial victim and did not deserve OC Spray. Rather, Mr. Greenlee was sprayed with OC Spray by Sgt. Small because after the initial attack, Mr. Greenlee placed his attacker in headlock and then refused to obey Sgt. Small's command to submit to restraints. So, it is irrelevant whether Sgt. Small knew how the initial attack came to be or not. No reasonable juror could find that Sgt. Neal and Officer Shick failed to intervene to stop the OC Spray when the reason that the OC Spray was used was Mr. Greenlee's own actions—not a lack of communication.

Additionally, and perhaps more significantly, the use of the OC Spray was justified considering Mr. Greenlee's headlock maneuver and refusal to comply with Sgt. Small's order to submit to restraints. *Soto*, 744 F.2d at 1270 (it is not cruel and unusual punishment to use "mace, tear gas or [an]other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners"). [Filing No. 29-1 at 18.] The use of OC Spray was therefore not excessive force, and because a claim for the failure to intervene in the use of excessive

force necessarily requires the application of excessive force, Mr. Greenlee's claim fails.[15] *Wilborn, 881 F.3d at 1007*; *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention.").

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Greenlee's Eighth Amendment failure to intervene claim against Sgt. Neal and Officer Shick related to Sgt. Small deploying OC Spray.

### C.    Eighth Amendment Excessive Force Claim Against Sgt. Koziatek

Defendants argue that they are entitled to summary judgment on Mr. Greenlee's claim that Sgt. Koziatek used excessive force when he deployed three rounds of OC Spray on Mr. Greenlee while Mr. Greenlee was in the shower unit. [Filing No. 36 at 13-15.] They assert that while in the shower unit, Mr. Greenlee "displayed disruptive, belligerent behavior," including quickly reaching through the cuff port toward Officer Vaughn's groin area, "and refused to comply with orders given by correctional staff." [Filing No. 36 at 13.] They argue that each burst was a one-second burst that was a justified response to Mr. Greenlee's behavior and his refusal to comply with orders, and that they were appropriately spaced at least ten minutes apart. [Filing No. 36 at 14.] Defendants also highlight that Mr. Greenlee had access to running water after each spray. [Filing No. 36 at 14.]

Mr. Greenlee argues that Sgt. Koziatek's use of OC Spray was excessive force that violated his Eighth Amendment right because the OC Spray was used in an unventilated room, which is

---

[15] Even if the Court exercised its discretion and construed Mr. Greenlee's belated assertion that Sgt. Neal was the individual who deployed the OC Spray, Mr. Greenlee's claim would still fail because it does not change the fact that Mr. Greenlee placed his attacker in a headlock and then immediately refused to obey a command to submit to restraints, thereby justifying the OC Spray.

"prohibit[ed]" by the "manufacturer's precautionary instructions."  [Filing No. 37 at 8-9 (citing "Affidavit/Interrogatory Responses of Adams and Koziatek").]  Mr. Greenlee cites to *Tiggs v. Hoddy-Tripp*, 2002 WL 32344430 (W.D. Wis. Mar. 14, 2002), for support regarding the manufacturer's instructions, arguing that a jury could find that the use of the OC Spray against the "manufacturer's express . . . instructions" violated his Eighth Amendment rights.  [Filing No. 37 at 9-10.]  Mr. Greenlee asserts that he is developing lung problems since the events and that the amount of time between the bursts of OC Spray violated prison policy.  [Filing No. 37 at 10-11.]

In reply, Defendants argue that Mr. Greenlee's argument that the use of the OC Spray did not comply with the manufacturer's instruction and was used "in allegedly unventilated showers" is completely speculative, lacks any citation to evidence or support in the record, and assumes facts that are not in the record.  [Filing No. 38 at 4.]  They assert that "none of the interrogatory responses from either [Officer Adams or Sgt. Koziatek] support the[ ] facts [Mr. Greenlee] offers."  [Filing No. 38 at 4.]  Defendants reiterate that Mr. Greenlee's behavior of not complying with orders, acting belligerently, and reaching through the cuff port toward Officer Vaughn justified the use of OC Spray each time and assert that Mr. Greenlee was warned of potential OC Spray use if such behavior continued.  [Filing No. 38 at 5 (citations omitted).]

The undisputed evidence establishes the following chronology of events related to the shower unit:

- Mr. Greenlee was handed a red jumpsuit through the cuff port, ordered to remove his clothes and put it on, which he refused do.  [Filing No. 29-1 at 24-25; Filing No. 29-9 at 00:00-00:27.]

- Mr. Greenlee quickly reached through the cuff port with a closed fist toward Officer Vaugh's groin area and not toward the canister in Officer Vaughn's left hand.  [Filing No. 29-9 at 06:55-06:58.]

17

- Mr. Greenlee was ordered by Sgt. Koziatek to change into the jumpsuit and submit to restraints, warning that if he did not comply, OC Spray would be used. [Filing No. 29-4 at 2; Filing No. 29-5 at 2.]

- Moments later, Sgt. Koziatek deployed the first burst of OC Spray. [Filing No. 29-9 at 09:30-09:47.]

- For the next ten minutes, Mr. Greenlee moved around erratically in the shower unit, used the jumpsuit to cover the window and cracks, and refused to submit to restraints despite orders to do so, [Filing No. 29-4 at 2; Filing No. 29-5 at 2; Filing No. 29-9 at 09:47-20:19], after which Sgt. Koziatek deployed the second burst of OC Spray, [Filing No. 29-9 at 20:19-20:32 (deployed about ten minutes after the first)].

- Mr. Greenlee's behavior continued, [Filing No. 29-9 at 20:32-32:41], at which point Sgt. Koziatek deployed the third burst of OC Spray, approximately twelve minutes after the second burst, [Filing No. 29-9 at 32:41-32:53].

Based on the video, it is clear that prior to the first burst of OC Spray, Mr. Greenlee refused to comply with orders, was acting erratically, and attempted to contact Officer Vaughn in the groin area with a closed fist. Prior to the second and third bursts of OC Spray, Mr. Greenlee's refusal to comply and erratic behavior continued. These circumstances confirm that the use of OC Spray was a measured and justified response to Mr. Greenlee's ongoing noncompliance and disruptive behavior, deployed in a good-faith effort to restore discipline—not as a malicious or sadistic act to inflict harm. *See Soto*, 744 F.2d at 1270; *Rice ex rel. Rice*, 675 F.3d at 668 (holding that pepper spray was justified when a prisoner struck his cellmate and refused to comply with an order to leave the cell), *abrogated on other grounds by Kemp*, 27 F.4th 491; *McCottrell*, 933 F.3d at 664. Accordingly, Sgt. Koziatek's use of OC Spray did not violate the Eighth Amendment. *Soto*, 744 F.2d at 1270.

Mr. Greenlee's argument regarding manufacturer's instructions and ventilation of the shower unit lacks citation to any relevant evidence and appears to be wholly unsupported by the record. Mr. Greenlee cites to the "Affidavit/Interrogatory Responses of Adams and Koziatek,"

18

[Filing No. 37 at 8], but the Affidavits of Officer Adams and Sgt. Koziatek do not contain information regarding manufacturer's instructions or ventilation, [Filing No. 29-4; Filing No. 29-6], and despite not needing to "scour the record" for evidence that might be relevant, *Grant*, 870 F.3d at 573-74, the Court did its best to find either the interrogatory responses, the manufacturer's instructions, or any ventilation information in the record, but the search proved unsuccessful.

As to Mr. Greenlee's citation to *Tiggs*, it does not save his claim. In *Tiggs*, the court explored, with the help of expert evidence, whether the use of a chemical agent in a cell with an exhaust fan violated the manufacturer's instructions. 2002 WL 32344430, at *8-9. The court held that the use of the chemical agent in the plaintiff's cell did not violate the plaintiff's Eighth Amendment rights and was not used in contravention of the manufacturer's instructions. *Id.* at *8-10. Significantly, *Tiggs* does not stand for any general principle which would help Mr. Greenlee and does not overcome the lack of evidence in this case related to the OC Spray manufacturer's instructions and ventilation of the shower unit where Mr. Greenlee was placed. Moreover, Mr. Greenlee's argument that he was sprayed with OC Spray in violation of prison policy is of no constitutional concern. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import"). Lastly, to the extent that Mr. Greenlee contends that his erratic behavior and failure to obey commands was justified due to the smelly and unclean jumpsuit or that his rights were violated by being ordered to put on such a jumpsuit, this argument fails. *Myers v. Ind. Dep't of Corr.*, 655 F. App'x 500, 504 (7th Cir. 2016) ("[D]eficiencies in whiteness and freshness [of clothing] . . . do not fall short of the minimal necessities that the Eighth Amendment requires for basic dignity.") (citation omitted).

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Greenlee's Eighth Amendment excessive force claim against Sgt. Koziatek.

**D.    Eighth Amendment Failure to Intervene Claim Against Officers Walsh, Norton, Adams, and Padgett**

Defendants argue that they are entitled to summary judgment against Mr. Greenlee on his claim that Officers Walsh, Norton, Adams, and Padgett violated his Eighth Amendment rights when they failed to stop Sgt. Koziatek from using OC Spray because Sgt. Koziatek's use of OC Spray was not excessive force and therefore that Officers Walsh, Norton, Adams, and Padgett had nothing to stop. [Filing No. 36 at 18.]

Mr. Greenlee argues that the Officers "failed to intervene" to stop Sgt. Koziatek's "malicious[ ]" use of OC Spray. [Filing No. 37 at 11.]

Defendants reiterate their argument in reply. [Filing No. 38 at 5-6.]

Because Mr. Greenlee's excessive force claim against Sgt. Koziatek fails as explained above, Mr. Greenlee's claim that Officers Walsh, Norton, Adams, and Padgett failed to intervene to protect Mr. Greenlee from Sgt. Koziatek must also fail. *Wilborn*, 881 F.3d at 1007. The Court **GRANTS** Defendants' Motion for Summary as to Mr. Greenlee's Eighth Amendment claim against Officers Walsh, Norton, Adams, and Padgett related to Sgt. Koziatek's use of OC Spray.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, [28].

Final judgment shall issue accordingly.

Date: 3/24/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Timothy Greenlee
865760
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362